**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15–cv–00423–CMA–KMT

MITCHEL LINCOLN,
RODNEY GEHRETT,
ROBERT KING,
CHERYL PECK, and
ROBERT STONE,

      Plaintiffs,

v.

TERRY MAKETA, in his individual capacity and in his official capacity as Sheriff of El Paso County,
PAULA PRESLEY, in her individual capacity and in her official capacity as Undersheriff of El Paso County,
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EL PASO,
BILL ELDER, in his official capacity as Sheriff, and
JOE BREISTER, in his official capacity as Undersheriff,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

---

This matter is before the Court on the following motions:

1.      "Motion to Dismiss from Defendant Terry Maketa" (Doc. # 28, filed April 30, 2015);

2.      "Defendant Presley's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. # 32, filed May 4, 2015);

3.      "County Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" filed by Defendants The Board of County Commissioners of the County of El Paso ("the BOCC"), Bill Elder, and Joe Breister (collectively "County Defendants") (Doc.# 33, filed May 4, 2015); and

4.      "County Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. # 85, filed November 30, 2015).

## BACKGROUND

Plaintiffs filed their Second Amended Complaint and Jury Demand on September 21, 2015, alleging claims pursuant to 42 U.S.C. §§ 1983 and 1988 and a claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–17.  *See* (Doc. # 64.)[1] Plaintiffs' claims arise from their employment with the El Paso County Sheriff's Office and are asserted against former Sheriff Terry Maketa, former Undersheriff Paula Presley, current Sheriff Bill Elder, current Undersheriff Joe Breister, and the Board of County Commissioners of the County of El Paso.  *See* (*Id.*)

Plaintiffs King, Lincoln, and Gherett allege that, on May 12, 2014, they went to Defendant Maketa's office and hand delivered an Equal Employment Opportunity Commission ("EEOC") complaint charging Defendant Maketa and the County with sexual discrimination in the workplace based on sexual favoritism.  (*Id.* at ¶ 12.)  The

---

[1] All of the motions to dismiss except the County Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, which added a claim for retaliation under Title VII, were filed and briefed prior to the filing of the Second Amended Complaint. However, the parties stipulated that "the briefing concerning the various pending motions to dismiss [filed with the Court prior to the Second Amended Complaint] shall apply to any claims addressed in those motions which remain in the Amended Complaint, with no need for further briefing."  *See* (Doc. # 61 at 2.)

EEOC charge was handed to Defendant Presley.  (*Id.*)  The EEOC charge stated that

Defendant Maketa granted favorable treatment to female subordinates with whom he

had intimate sexual relations and discriminated against subordinates who refused to

engage in intimate sexual relations with him.  (*Id.*)  Also on May 12, 2014, Plaintiffs

King, Lincoln, and Gherett submitted a written complaint to the Board of County

Commissioners requesting an investigation of Defendants Maketa and Presley for

hostile work environment, threats, a sexually discriminatory workplace, improper

procurement and budget practices, and retaliation for political views and civil rights

violations.  (*Id.* at ¶ 13.)  Plaintiffs Lincoln, King, and Gehrett allege that within three

hours of delivering the EEOC complaint and BOCC request for investigation to

Defendant Maketa's office, they were placed on administrative leave.  (*Id.* at ¶ 16.)

Plaintiffs Lincoln and King also allege Defendants Maketa and Presley filed internal

affairs complaints against them in July and September 2014.  (*Id.* at ¶¶ 21–22.)

Plaintiff Stone alleges Defendant Maketa looked at Elder's campaign website on

a regular basis to see the names of people listed as supporters of Elder, saw Plaintiff

Stone's name on that list, and retaliated against Plaintiff Stone because he supported

Elder.  (*Id.* at ¶¶ 42, 92, 94.)

Plaintiff Peck alleges Defendant Maketa asked her to lie to the media, and, when

she spoke truthfully instead, she was removed from her position as Lieutenant of

Internal Affairs and moved to Lieutenant of Patrol on the midnight shift.  (*Id.* at ¶¶ 62–

63.)

Plaintiffs assert the following claims: (1) a section 1983 claim by Plaintiffs Lincoln, King and Gehrett alleging First Amendment retaliation against all defendants related to the plaintiffs' filing of the EEOC charge; (2) a section 1983 claim by Plaintiffs Lincoln, King, and Gehrett alleging First Amendment retaliation against all Defendants related to the Plaintiffs' submission of a request for an investigation by the BOCC; (3) a section 1983 claim by Plaintiff Peck alleging First Amendment retaliation against Defendants Maketa, the BOCC, and Elder for Plaintiff Peck's speaking to the media; (4) a section 1983 claim by Plaintiff Stone alleging First Amendment retaliation against Defendants Maketa, the BOCC, and Elder for Plaintiff Stone's political affiliation; (5) an outrageous conduct claim asserted by all plaintiffs against Defendants Maketa and Presley; and (6) a Title VII retaliation claim by Plaintiffs Lincoln, King, and Gehrett against Defendant Elder for the plaintiffs' filing a claim to the EEOC.  *See* (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall*

*v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of

a motion to dismiss, means that the plaintiffs have pled facts which allow "the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  The *Iqbal* evaluation is a two-step analysis.  First, the court identifies "the allegations

in the complaint that are not entitled to the assumption of truth," that is, those

allegations that are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 679–

81.  Second, the Court considers the factual allegations "to determine if they plausibly

suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for

relief, such claim survives the motion to dismiss.  *Id.* at 679.

The court need not accept conclusory allegations without supporting factual

averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556

U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'  Nor does the complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*

(citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of

'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

**1) Government or Municipal Liability**

The County Defendants argue that Plaintiffs have failed to state any plausible

claim for relief against Defendant BOCC.  (Doc # 33 at 6–13.)

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), the

Supreme Court enunciated the rule for imposing liability on a governmental entity:

> [A] local government may not be sued under § 1983 for an injury inflicted
> solely by its employees or agents.  Instead, it is when execution of a
> government's policy or custom, whether made by its lawmakers or by
> those whose edicts or acts may fairly be said to represent official policy,
> inflicts the injury that the government as an entity is responsible under §
> 1983.

*Monell*, 436 U.S. at 694.  "The 'official policy' requirement was intended to distinguish

acts of the municipality from acts of employees of the municipality, and thereby make

clear that municipal liability is limited to action for which the municipality is actually

responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).  At a minimum, a

party asserting a *Monell* claim must plead sufficient facts to identify the unconstitutional

custom or policy that was promulgated and the means by which that custom or policy

caused the constitutional violation.  *See, e.g., Hollingsworth v. Hill*, 110 F.3d 733, 742

(10th Cir. 1997).

Here, Plaintiffs' allegations of an unconstitutional custom or policy maintained by

the BOCC or the El Paso County Sheriff's Office are entirely conclusory.  Plaintiffs offer

only the "formulaic recitation" of a *Monell* claim, alleging that "El Paso County is liable

under § 1983 because the County itself is the moving force behind the Constitutional

torts alleged in this complaint and El Paso County's policy or custom played a part in

the violation law [sic] here alleged" (Doc. # 64 at 3) and that "[t]he County is liable

because under *Monell* the actions taken by Maketa and Presley were a policy or custom

of the county because they are actions taken by their final policymakers, whether or not

those actions conform to the county's own pre-existing rules" (*Id.* at ¶¶ 72, 82, 89, 95).

Plaintiffs never identify any particular custom or policy under which Defendants Maketa

and Presley were acting, nor do they specify how any custom or policy caused

Defendants Maketa and Presley to violate Plaintiffs' constitutional rights.  As *Iqbal*

makes clear, such conclusory allegations are insufficient to state a claim.

Plaintiff's section 1983 claims against Defendant BOCC are dismissed.

**2)  Official Capacity Claims Against Individual Defendants**

All of the defendants move to dismiss the official-capacity claims against them.

(Doc. # 28 at 3; Doc. # 32 at 4; Doc. # 33, n.6.)

Official capacity claims are considered to be claims for municipal liability and are

thus one and the same as suing the county.  *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S.

159, 165–66 (1985) (an official capacity "suit is, in all respects other than name, to be

treated as a suit against the entity"); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151

F.3d 1313, 1316 n.2 (10th Cir. 1998).  "There is no longer a need to bring official-

capacity actions against local government officials [because] local government units can

be sued directly."  *Graham*, 473 U.S. at 167, n.14.

Thus, the official capacity claims against the individual defendants are dismissed. Moreover, it is clear from the Second Amended Complaint that Plaintiffs assert claims against Defendants Elder and Breister in their official capacities only.  See (Doc. #77 at 1, 4.)  Thus, Plaintiffs' section 1983 claims against Defendants Elder and Breister are also dismissed in their entirety.

**3)  First and Second Claims for Retaliation – Plaintiffs Lincoln, King, and Gehrett**

In the Second Amended Complaint, Plaintiffs Lincoln, King, and Gehrett assert that they were retaliated against by Defendants Maketa and Presley because they filed an EEOC charge alleging that the El Paso County Sheriff's Office and Defendant Maketa fostered "sexual favoritism which has created a hostile work environment." (Doc. # 28-1 at 1.)  Plaintiffs Lincoln, King, and Gehrett also allege they were retaliated against by Defendants Maketa and Presley because they submitted a BOCC request for investigation alleging a pattern of "troubling practices at the Sheriff's Office." Defendants Maketa and Presley argue that these retaliation claims should be dismissed because the issues presented in the EEOC charge and the BOCC request for investigation are not matters of public concern.

Although Plaintiffs have asserted separate retaliation claims regarding the EEOC charge and the BOCC request for investigation, the Court disagrees that these are independent retaliation claims.  Both the EEOC charge and the BOCC request for investigation were delivered simultaneously, and Plaintiffs assert that the alleged retaliatory acts were in response to both.  Thus, the two are inextricably intertwined.

Therefore, the Court consolidates the First and Second Claims into one retaliation claim and will construe the motions to dismiss accordingly.

    *a)  Legal Standard*

    To make of a *prima facie* case of retaliation in violation of the First Amendment, a plaintiff must establish:

> (1) he was "engaged in constitutionally protected activity,"
> (2) that the defendant's actions caused him to suffer an "injury that would chill a person of ordinary firmness from continuing to engage in that [protected] activity," and
> (3) that the defendant's actions "were substantially motivated as a response to his constitutionally protected conduct."

*Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).  "The First Amendment prohibits the government from punishing a person for exercising the right to free speech."  *Deutsch v. Jordan*, 618 F.3d 1093, 1097 (10th Cir. 2010).  When the government is a person's employer, however, the right to free speech can be limited in ways that would otherwise be unconstitutional.  *Deutsch*, 618 F.3d at 1097.  "Speech, for example, can be insubordinate, disruptive, or demoralizing; and government employers are not required to let such misconduct pass."  *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1079 (10th Cir. 2011). " 'Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.' "  *Merrifield*, 654 F.3d at 1079 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

    Courts employ a five-step approach derived from *Garcetti* and *Pickering v. Board of Education*, 391 U.S. 563 (1968), to balance the public employee's right to speak as a

citizen on matters of public concern against the government employer's interest in

ensuring the efficient provision of public services.  Courts must consider:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Leverington v. City of Colo. Springs*, 643 F.3d 719, 724 (10th Cir. 2011) (internal

quotation marks omitted).  The first three steps are matters of law for the court to

decide, while the last two steps are for the fact finder.  *See Deutsch*, 618 F.3d at 1098.

A public employee's speech is unprotected if it was made pursuant to official duties, if it

was not on a matter of public concern, or if the balance of interests favors the employer.

*See Id. at* 1097–98. Implicit in the test "is a requirement that the public employer have

taken some adverse employment action against the employee." *Belcher v. City of*

*McAlester, Okla.*, 324 F.3d 1203, 1207 n. 4 (10th Cir. 2003).

> b)  *Analysis*

In response to the retaliation claims brought by Plaintiffs Lincoln, Gehrett, and

King, Defendants Maketa and Presley argue that (1) the speech at issue was not

protected because it did not implicate a matter of public concern, (2) that Plaintiffs

suffered no adverse employment action, (3) that the balance of interests favor the

government employer, and (4) that Defendants' are entitled to qualified immunity.

(Doc.# 28 at 5–8, 11; Doc. # 32 at 8–11.)  This Court will address each argument in

turn.

(1) <u>Matter of Public Concern</u>

The court must first determine if the Plaintiffs' speech "involves a matter of public concern." *Dill v. City of Edmund*, 155 F.3d 1193, 1201 (10th Cir. 1988). "[S]peech on public issues occupies the highest rung of the heirarchy [sic] of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (2008) (quotation omitted). Therefore, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 411. However, "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without any intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146.

Speech that pertains to a public agency's "discharging its governmental responsibilities" ordinarily will be regarded as speech on a matter of public concern. *Connick*, 461 U.S. at 148. In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern. *See Id.* at 147–49; *Woodward v. City of Worland*, 977 F.2d 1392, 1403 (10th Cir.1992). To distinguish between the two, courts must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. "The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee]

or to address a broader public purpose [and therefore spoken as a citizen]." *Workman*

*v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994).

Disclosure of "evidence of corruption, impropriety, or other malfeasance on the

part of city officials . . . clearly concerns matters of public import." *Conaway v. Smith*,

853 F.2d 789, 796 (10th Cir. 1988) (citations omitted).  In addition, "[s]peech that calls

attention to a government's failure to discharge its governmental duties generally

constitutes a matter of public concern." *Lee v. Nicholl*, 197 F.3d 1291, 1295 (10th Cir.

1999) (citation omitted).

As to the EEOC charge, in *Woodward*, the Tenth Circuit addressed a First

Amendment claim in which employees of a county sheriff's department alleged that their

supervisors had retaliated against them after they filed formal sexual harassment

complaints against a police officer and an undersheriff.  977 F.2d at 1403–04.  In

*Woodward*, "the thrust of the Plaintiffs' speech was that they personally were being

subjected to sexual harassment and they wanted it to stop."  *Id.*  The Court held that,

though the complaints contained several general references to the possibilities that

other women in the department had been sexually harassed, the purpose of the

complaints was to address personal grievances rather than to assert that the sheriff's

office had failed to discharge its official responsibilities.  *Id.* at 1404.

The instant case, however, is distinguishable from *Woodward* because the

EEOC charge alleges that Defendant Maketa "grants considerable favorable treatment

[including promotions, pay increases, work assignments, work conditions, training

opportunities, and leave] to female subordinates with whom he has sexual relations"

and treats "with disfavor female subordinates who have refused to engage in sexual relations with him" (Doc. # 28-1 at 1–2.)  It appears that the purpose of Plaintiffs' EEOC charge was to address both the personal grievances of the male plaintiffs, and the grievances of the female subordinates who allegedly were treated with disfavor and discriminated against when they refused to engage in sexual relations with Defendant Maketa.

Moreover, the BOCC request for investigation alleged "Procurement and Budget Practices Inconsistent with County Policies," removal of "all of the chain of command review and oversight of the Sheriff's Office budget" that "potentially place[s] El Paso County at considerable financial risk," and "Retaliation for Political Views and Violations of Civil Rights." (Doc. # 28-2 at 1, 5.)   These allegations, along with the allegations of sexual misconduct in the EEOC charge, are allegations "of corruption, impropriety, or other malfeasance" by Defendants Makata and Presley.  *Conaway,* 853 F.2d at 796. These are "subjects that could reasonably be expected to be of interest to persons seeking to develop informed opinions about the manner in which [Defendant Maketa], an elected official charged with managing a vital governmental agency, discharges his responsibilities."  *Connick*, 461 U.S. at 145. [2]

---

[2] For the same reasons, the instant case is disntinguishable from the other cases cited by Defendants Maketa and Presley in support of their argument that the plaintiffs' speech was not a matter of public concern.  *See David v. City & Cnty. of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996) (plaintiff personally subjected to sexual harassment and retaliation); *Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994) (protected speech was limited to termination grievance and to address personal grievances); *Huff v. Colo. Dep't of Corr.*, Civil Action No. 11–cv–00149–CMA–MJW, 2012 WL 3135715, at *5 (D. Colo. July 31, 2012) (plaintiff's complaints of harassment related to purely personal grievances affecting her own conditions of employment).

Defendant Maketa also argues that the BOCC request for investigation "was a nullity because under Colorado law the BOCC has no authority to oversee any personnel or employment decisions of the Sheriff." (Doc. # 28 at 7–8.) This is a red herring. The issue is not whether the BOCC had any authority to do anything with the Plaintiffs' request for investigation. Rather, the issue is whether Defendants retaliated against Plaintiffs for submitting the request for investigation.

The Court finds that, for purposes of a motion to dismiss, Plaintiffs Lincoln, King, and Gehrett have adequately established that the EEOC Complaint and the BOCC request for investigation both contained speech that was a matter of public concern.

(2) Adverse Employment Action

Plaintiffs Lincoln, King, and Gehrett allege that within three hours of delivering their EEOC Complaint and the BOCC request for investigation, they were placed on administrative leave. (Doc. # 64 at ¶ 15–16.) Plaintiffs Lincoln, King, and Gehrett further allege that Defendant Presley took their phones, iPads, duty weapons, ID cards, badges, and vehicles, which was contrary to office policy concerning administrative leave. (*Id.* at ¶ 19.) On July 31, 2014, Defendant Presley filed an internal affairs complaint against Plaintiff King (*Id.* at ¶ 21), and on September 4, 2014, Defendant Maketa filed an internal affairs complaint against Plaintiff Lincoln (*Id.* at ¶ 22).

Defendants argue that placing Plaintiffs Lincoln, King, and Gehrett on paid administrative leave is not an adverse employment action.[3]

_____

[3] This Court in not aware of any Tenth Circuit decision addressing whether placing an employee on paid administrative leave during the pendency of an investigation is an adverse action. Defendant Maketa cites *Carrero v. Robinson*, Civil Action No. 05–cv–

Plaintiffs, citing *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005), argue that

"a First Amendment retaliation claim may be based on 'repercussions that would not be

actionable under Title VII.' " (Doc. # 46 at 9.) In *Baca*, the Court determined that the

plaintiff's allegations that he was retaliated against by removal of his supervisory

responsibilities over another employee, by depriving the plaintiff of the opportunity to

supervise a data analyst whom he had recruited, by encouraging other employees to

bypass the plaintiff and receive direct supervision from the defendant, by reprimanding

the plaintiff in contravention of university protocol, and by filing an internal Office of

Equal Opportunity charge against the plaintiff and then using that charge to demand the

plaintiff's resignation could constitute adverse employment actions. *Baca*, 398 F.3d at

1221.

The Tenth Circuit's footnote in *Belcher* is instructive:

Implicit in the *Pickering* test is a requirement that the public employer have
taken some adverse employment action against the employee. *See Koch
v. City of Hutchinson*, 847 F.2d 1436, 1440 (10th Cir. 1988) (noting that
*Pickering* and its progeny "establish the basic framework for analyzing a

---

02414–MSK–CBS, 2007 WL 1655350 (June 6, 2007), and *Spagnuolo v. City of
Longmont,* Civil Action No. 05–cv–00729–WDM–CBS, 2006 WL 2594484 (Sept. 11,
2006), in which judges from this Court have concluded that administrative leave with
pay during the pendency of an investigation does not constitute an adverse employment
action. However, in *Carrero*, the court did not decide, in the context of the plaintiff's
section 1983 claim, whether plaintiff's being suspended during an investigation was an
adverse action. *Carrero*, 2007 WL 1655350, at *7. Rather, the court determined that
the plaintiff failed to allege an adverse action pursuant to 42 U.S.C. § 1981 and Title VII
related to his request for and subsequent denial of a transfer to the same position in a
different facility. 2007 WL 1655350, at *9–10. *Spagnuolo v. City of Longmont* involved
a city employee who was investigated—but not placed on leave—after he called into a
radio show. *Spagnuolo*, 2006 WL 2594484, at *1–2. The court held that an
investigation by a public employer is not an actionable retaliation for exercise of First
Amendment rights. 2006 WL 2594484, at *4. Thus, this case is distinguishable from
both *Carrero* and *Spanuolo*.

claim by a public employee that his or her governmental employer made an *adverse employment decision* in violation of the employee's First Amendment rights" (emphasis added)).  If the action taken by the employer in response to the employee's speech is inconsequential or has only speculative consequences, there can be no basis for a First Amendment claim.  *See*, *e.g.*, *Thomsen v. Romeis*, 198 F.3d 1022, 1027–28 (7th Cir. 2000) (holding that written reprimands with only "speculative" consequences do not constitute adverse actions).  Defendants argue that the written reprimand issued to Belcher does not constitute an actionable adverse action.

We do not consider Belcher's reprimand so insignificant as to strip his speech of First Amendment protection.  The Supreme Court has explicitly recognized that "deprivations less harsh than dismissal" may trigger First Amendment protection. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990). While Belcher was not terminated as a result of his speech, the written reprimand specified "that any more violations of this type will result in more severe disciplinary action up to and or including dismissal from the McAlester Fire Department." [ ]  Threats of dismissal based on an employee's speech may constitute adverse employment action.  *See Rutan*, 497 U.S. at 64.

In reprimanding Belcher, the fire department chilled any future attempts to contact Council members outside of a public meeting.  We conclude that this chilling effect is real, and that Belcher has shown that he was subject to adverse employment action as a result of his speech.

*Belcher*, 324 F.3d at 1207 n.4.

Plaintiffs argue that Defendant Presley's taking their phones, iPads, duty weapons, ID cards, badges, and vehicles is "more adverse and humiliating than the actions taken in *Baca*."  The Court agrees.  In *Baca*, the court determined the plaintiff was the subject of a nearly year-long "campaign of retaliation culminating in his resignation." 398 F.3d at 1213–15.  Though, as to Plaintiffs Lincoln, King, and Gehrett, the alleged retaliation did not result in the plaintiffs' resignations or termination, the defendants' alleged retaliatory actions took place over a significant period of time during which the Plaintiffs' job accoutrements were taken and the plaintiffs were "publically

demeaned, embarrassed and humiliated" when they "were escorted out of their offices and walked out to the street" (Doc.# 64 at ¶¶ 14, 18, 71), subjected to IA investigations (*Id.* at ¶¶ 21–23), and placed on administrative leave until the BOCC substantiated their complaints (*Id.* at ¶ 27).

When viewed in totality, Defendants' actions constitute an evident attempt to chill Plaintiffs' speech. *Nielander*, 582 F.3d at 1165. The conduct set forth by these allegations is, at the pleading stage, sufficiently egregious to state a First Amendment retaliation claim.

(3) Balance of Interests

Defendants Maketa and Presley also argue that their actions in suspending Plaintiffs Lincoln, King, and Gehrett were justified given the need for a functioning Sheriff's Office. (Doc. # 28 at 10–11; Doc. # 32 at 14–15.)

Specifically, Defendant Maketa argues his need to trust his commanders outweighs the Plaintiffs' interests in speaking about confidential matters outside the Sheriff's Office. *See* (Doc. # 28 at 10–11.) In support of this argument, Defendant Maketa cites *Lytle v. City of Haysville, Kan.*, 138 F.3d 857 (10th Cir. 1998). In *Lytle*, the Court held that an officer's interests in speaking to news media and to the attorney of a shooting victim's widow about a confidential police investigation were far outweighed by the police department's interest in maintaining confidentiality and avoiding workplace disruption. 138 F.3d at 865–68. In *Lytle*, the Court determined on summary judgment that it was not reasonable for the officer to conclude that there was government misconduct. *Id.* at 866. Moreover, the Court determined that plaintiff's breach of police

department confidentiality rules and orders had damaged the department.  *Id.* at 867.

The Court held that the plaintiff's limited interest as a whistle blower was far outweighed

by the police department's interest in maintaining confidentiality and avoiding workplace

disruption.  *Id.* at 868.

Here, Plaintiffs allege that the BOCC investigated their complaints, and the

"investigation substantiated the complaints made by the Commanders against Maketa

and Presley."  (Doc. # 64 at¶ 24, 27.)  Thus, Plaintiffs have alleged a reasonable basis

to conclude there was misconduct.  These allegations are contradictory to a sheriff's

office that is attempting to "promot[e] the efficiency of the public service."  *Leverington*,

643 F.3d at 724.  The court finds that Plaintiffs have alleged facts sufficient to show that

their interests outweighed the Defendants' claimed interest in maintaining a functioning

Sheriff's Office.

(4) Qualified Immunity

Qualified immunity is an affirmative defense against 42 U.S.C. § 1983 damage

claims available to public officials sued in their individual capacities.  *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009).  The doctrine protects officials from civil liability for

conduct that does not violate clearly established rights of which a reasonable person

would have known.  *Id.*  As government officials at the time the alleged wrongful acts

occurred, being sued in their individual capacities, the Defendants are entitled to invoke

a qualified immunity defense.  *See Id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307

(1995) (noting that police officers were "government officials – entitled to assert a

qualified immunity defense").

In resolving a motion to dismiss based on qualified immunity, a court looks at:
"(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional
right, and (2) whether the right at issue was clearly established at the time of
defendant's alleged misconduct." *Leverington*, 643 F.3d at 732 (quoting *Pearson*, 555
U.S. at 232) (internal quotations omitted).  Once a defendant invokes qualified
immunity, the burden to prove both parts of this test rests with the Plaintiff, and a court
must grant the defendant qualified immunity if the plaintiff fails to carry his burden.
*Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).  Where no constitutional
right has been violated "no further inquiry is necessary and the defendant is entitled to
qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir.
2008) (quotations omitted).

Defendants Maketa and Presley argue that it is not clearly established that the
initiation of an investigation into allegations of workplace misconduct in retaliation for
protected speech violates the First Amendment.  *See (*Doc. # 28 at 12; Doc. # 32 at 16.)
In support of this argument, Defendants cite *Churchill v. University of Colorado*, 285
P.3d 986 (Colo. 2011).  In *Churchill*, the plaintiff appealed the trial court's directed
verdict and the Court of Appeal's subsequent affirmation of the trial court's decision
regarding his bad faith investigation claim.  *Churchill*, 285 P.3d at 1009.  The Colorado
Supreme Court held that "a reasonable public official would not know that the initiation
of an employment investigation in response to protected speech would be unlawful."
285 P.3d at 1011.  The Court noted that there is a disagreement among federal courts
"about whether an alleged bad faith employment *investigation*, absent a punitive change

in employment status, is adverse and actionable under Section 1983." *Id.* at 1010

(emphasis added) (*comparing Smith v. Fruin*, 28 F.3d 646, 649 n.3 (7th Cir.1994)

("[E]ven minor forms of retaliation can support a First Amendment claim, for they may

have just as much of a chilling effect on speech as more drastic measures."), *with*

*Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1243 (10th Cir.

2009) ("An investigation of potential misconduct . . . will generally not constitute an

adverse employment action."), *and Carrero v. Robinson*, 05cv–02414, 2007 WL

1655350, at *10 (D. Colo. June 5, 2007) ("The Court cannot say that an investigation

alone constitutes an adverse employment action . . . . [T]o be adverse, an employment

action must be a significant change in employment status." (internal quotation omitted)).

In this case, however, the Court has already determined that Plaintiffs were

subjected to more than a mere investigation.   Plaintiffs cite to *Pickering* to support their

argument that their First Amendment rights were clearly established at the time of the

unlawful conduct.  It is clearly established that public employment cannot be conditioned

"on a basis that infringes the employee's constitutionally protected interest in freedom of

expression."  *Connick*, 461 U.S. at 142; *Pickering*, 391 U.S. 563.  "[I]t is essential that

public employees be able to speak out freely [on matters of public concern] without fear

of retaliat[ion]."  *Connick*, 461 U.S. at 149.  "Vigilance is necessary to ensure that public

employers do not use authority over employees to silence discourse, not because it

hampers public functions but simply because superiors disagree with the content of

employees' speech."  *Id.* at 384.

The court agrees with Plaintiffs Lincoln, King, and Gehrett that it is clearly established that their First Amendment rights were violated if they were subjected to retaliation for their protected speech. Accordingly, the defense of qualified immunity is unavailable.

For the foregoing reasons, Defendants' motions to dismiss are denied with respect to the first and second claims for retaliation made by Plaintiffs Lincoln, King, and Gehrett.

**4)  Third Claim for Retaliation – Plaintiff Peck**

In the Third Claim for Retaliation, Plaintiff Peck alleges that in 2013:

1.      Defendants Maketa and Presley[4] "determined to influence the political race for and election of the successor sheriff of El Paso County." (Doc. # 64 at ¶ 30.)

2.       Defendant Elder was, at that time, a known candidate for sheriff who had previously served as a sheriff's officer in El Paso County.  (*Id.* at ¶ 32.)

3.      Defendants Maketa and Presley "agreed with each other to concoct and devise[ ] a plan to discredit Elder as a candidate for sheriff that involved supposedly adverse and negative information about Elder contained in an Internal Affairs (IA) file concerning Elder['s] conduct while he had previously been a sheriff's officer." (*Id.* at ¶ 33.)

4.      Plaintiff Peck, the officer in charge of the IA unit, discovered that the Elder IA file was missing from the IA unit's files, and she notified her supervisor, who in turn notified Defendant Presley.  (*Id.* at ¶¶ 36–37.)

5.      The missing IA file was of public interest in El Paso County, and in January and February of 2014, Defendant Maketa encouraged Plaintiff Peck to speak to the media and "promote a[ ] narrative that falsely asserted that Elder supporters in the sheriff['s] office had taken the Elder file." (*Id.* at ¶¶ 60–61.)

6.      Plaintiff Peck spoke to media but spoke truthfully.  (*Id.* at ¶ 62.)

7.      Because Plaintiff Peck spoke truthfully, in March 2014, she was removed from her position as Lieutenant of Internal Affairs and moved to Lieutenant of Patrol on the midnight shift.  (*Id.* at ¶ 63.)

---

[4] The Third Claim for Retaliation names only Maketa as a defendant.

Defendant Maketa moves to dismiss Plaintiff Peck's retaliation claim, arguing Peck's communications to the media were made in her capacity as head of the Internal Affairs Department and did not implicate matters of public concern, such that the speech does not enjoy First Amendment protection.  (Doc. # 28 at 13-14.)  Defendant Maketa also argues that Plaintiff Peck suffered no adverse employment action.  (*Id.* at 8-9)  Finally, Defendant Maketa argues that he is entitled to the defense of qualified immunity.  (*Id.* at 11-15.)

a)  *Legal Standard*

The Court described at length the relevant legal standard in its consideration of the retaliation claims brought by Plaintiffs Lincoln, Gehrett, and King. In the interest of brevity, that discussion is incorporated herein by reference.

b)  *Analysis*

(1)  Matter of Public Concern and Official Capacity

In response to the motion for dismissal, Plaintiff Peck argues:

> [T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech.  The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.

(Doc. # 46 at 12) (citing *Lane v. Franks*, 134 S. Ct. 2369 (2014)). Plaintiff Peck further alleges that "speaking to the press and television reporters was not part of [her duties]" and that Defendant Maketa asked her to lie about who had taken the IA file.  The Court agrees with Plaintiff Peck that lying to the press about an investigation is not part of Plaintiff Peck's official duties.  (Doc. # 64 at ¶¶ 86, 61.)  Moreover, the Court finds that

Plaintiff Peck's speech was not intended to redress a personal grievance, but rather "to address a broader public purpose." *Workman*, 32 F.3d at 483.  Therefore, for purposes of a motion to dismiss, Plaintiff Peck has adequately established that her communications with the media were not delivered in her official capacity and constitute speech on a matter of public concern.

(2) Adverse Employment Action

The Supreme Court has held that employment actions commonly considered serious enough to inflict constitutional injury include refusals to hire, refusals to promote, reprimands, demotions, and discharges. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 (1990).  In *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998), the Court held that a female teacher denied transfer to a position with "the same salary and benefits . . . [and] substantially similar duties" did not suffer an adverse employment action because the position was "a purely lateral transfer."  *Sanchez*, 164 F.3d at 532.  "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action."  *Id.* at 532 n.6.

In employment cases, "[t]he clear trend of authority is to hold that a purely lateral transfer, that is a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action."  *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (internal quotation omitted).  A transfer or reassignment which involves only minor changes in working conditions and does not

involve a reduction in pay or benefits does not constitute an adverse action.
*Ledergerber*, 122 F.3d at 1144–45.  *See Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir.
1999) (same); *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998)
(same); *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (same).

Plaintiff Peck alleges she was transferred from her position as Lieutenant of
Internal Affairs on a day shift to a Lieutenant of patrol on the midnight shift.  (Doc. # 64
at ¶ 63.)  The Court finds Plaintiff's allegation that she was transferred from the day shift
to the midnight shift could be construed as a "demotion in form or substance" sufficient
to constitute an adverse action.  Moreover, Defendant Maketa's actions appear to have
been attempts to chill Plaintiff Peck's speech.  *Nielander*, 582 F.3d at 1165.

(3) Qualified Immunity

In accordance with the foregoing analysis and for the same reasons described in
this Court's discussion of the first and second claims for retaliation, Defendant Maketa is
not entitled to the defense of qualified immunity.

For the foregoing reasons, Defendant Maketa's motion to dismiss is denied with
respect to the third claim for retaliation made by Plaintiff Peck.

**4)  Fourth Claim for Retaliation – Plaintiff Stone**

Plaintiff Stone alleges that in 2013, Defendants Maketa and Presley[5] "determined
to influence the political race for and election of the successor sheriff of El Paso County"
(Doc. # 64 at ¶ 30), saw Plaintiff's Stone's name on Elder's website (*Id.* at ¶ 42), and in
December 2013 instituted a criminal investigation against Plaintiff Stone based on a

---

[5] The Fourth Claim for Retaliation names only Maketa as a defendant.

concocted story about a missing Internal Affairs file (*Id.* at ¶ 44).  In his motion to dismiss, Defendant Maketa argues Plaintiff Stone suffered no adverse employment action or, in the alternative, that Plaintiff Stone cannot show a causal relationship between his protected speech and an adverse action.  Defendant Maketa again raises the defense of qualified immunity.

The Court again incorporates by reference its discussion of the legal standard for retaliation set forth in its analysis of the first and second claims for retaliation and the instructive standard for adverse action articulated in *Belcher*.  The Court concludes that Plaintiff Stone has alleged facts sufficient to show that an adverse action, specifically an allegedly malicious and frivolous investigation, resulted from his support of Defendant Maketa's political opponent and that the retaliation, considered in context, was intended to chill speech.  *Nielander*, 582 F.3d at 1165.  For the reasons described *supra*, this Court again concludes that Defendant Maketa is not entitled to the defense of qualified immunity.

For the foregoing reasons, Defendant Maketa's motion to dismiss is denied with respect to the fourth claim for retaliation made by Plaintiff Stone.

**5)  Title VII Retaliation Claim Against the County Defendants**

Plaintiffs Lincoln, King, and Gehrett assert that the County Defendants retaliated against them by placing them on administrative leave after they submitted their EEOC claim and BOCC request for investigation.  (Doc. # 64 at ¶ 107.)

To the extent Plaintiffs assert a Title VII claim against Defendant Elder, Title VII "liability is appropriately borne by employers, not individual supervisors."  *Haynes v.*

*Williams*, 88 F.3d 898, 901 (10th Cir. 1996).  As such, "personal capacity suits against individual supervisors are inappropriate under Title VII."  *Haynes*, 88 F.3d at 901.  Plaintiffs' Title VII claim against Defendant Elder is dismissed.

To establish a *prima facie* Title VII claim for retaliation, an employee must establish (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006).  The County Defendants argue that Plaintiff has failed to meet the second and third elements of a Title VII retaliation claim.  As discussed *supra*, as to Plaintiffs Lincoln, King, and Gehrett, the court finds Plaintiffs have pleaded that they were subjected to an adverse employment action.

The last hurdle Plaintiffs must overcome is pleading that their adverse employment action was connected to the filing of the EEOC charge and submission of the BOCC request for investigation.  "A retaliatory motive may be inferred when an adverse action closely follows protected activity.  However, unless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (internal citations omitted); *see also O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001).

Plaintiffs Lincoln, King, and Gehrett were placed on administrative leave three hours after delivering the EEOC charge and the BOCC request for investigation.  (Doc.

# 64 at ¶ 15–16.)  The court finds Plaintiffs Lincoln, King, and Gehrett have pled facts

satisfying the causation element for a *prima facie* case of retaliation under Title VII.

## 6)  Outrageous Conduct Claim

Defendants Maketa and Presley also seek to dismiss Plaintiffs' Outrageous

Conduct claim as barred by the Colorado Governmental Immunity Act ("CGIA").

Defendant Presley seeks to dismiss Plaintiffs' outrageous conduct claim as barred by

the Colorado Workers' Compensation Act.

### a)  CGIA

The CGIA provides that "no public employee shall be liable for injuries arising out

of an act or omission occurring during the performance of his or her duties and within

the scope of his or her employment, unless such act or omission was willful and

wanton."  Colo. Rev. Stat. § 24–10–105(1).  The statute functionally extends the State

of Colorado's sovereign immunity to employees of a municipality.  Colo. Rev. Stat. §

24–10–103(4)(a) (discussing purpose of CGIA).

A claim of sovereign immunity implicates the Court's subject-matter jurisdiction.

*E.F. W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1302–03 (10th Cir. 2001);

*Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997).  Although sovereign

immunity is recognized as an affirmative defense, it is clear that the party seeking to sue

a defendant that enjoys sovereign immunity bears the burden of showing that such

immunity has been waived. *See, e.g., James v. United States*, 970 F.3d 750, 752 (10th

Cir. 1992); *Smith v. Bd. of Educ.*, 83 P.3d 1157, 1167 (Colo. App. 2003).  Thus, it is the

Plaintiffs' burden to plead facts sufficient to allege that Defendants Maketa and

Presley's conduct was "willful and wanton," so as to take them outside the protection of the CGIA.

Whether a plaintiff has pleaded sufficient facts to allege willful and wanton conduct is a matter to be determined by the Court.  For purposes of the CGIA, a person engages in "willful and wanton" conduct when that person "purposefully pursued a course of action or inaction that he or she considered would probably result in harm" to the plaintiff.  *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001).

The court finds that Plaintiffs Lincoln, King, Gehrett, Peck and Stone have alleged defendants "purposefully pursued a course of action or inaction that he or she considered would probably result in harm" to them by placing Plaintiffs Lincoln, King, and Gehrett on administrative leave, by filing internal affairs complaints against Plaintiffs King and Lincoln, and by transferring Plaintiff Peck to a position on the night shift. Moreover, the court finds that Plaintiff Stone has sufficiently alleged outrageous conduct by Defendants Maketa and Presley by their instituting a criminal investigation against Plaintiff Stone based on an allegedly concocted story about a missing Internal Affairs file.

Defendants Maketa and Presley's motions to dismiss Plaintiffs' outrageous conduct claim as barred by the CGIA are denied.

b)  *Colorado Workers' Compensation Act*

Defendant Presley argues that the Plaintiffs' outrageous conduct claim is barred by the Colorado Workers' Compensation Act because Plaintiffs have alleged Defendant

Presley's conduct "was in the course and scope of her employment as Undersheriff."
(Doc. # 32 at 19.)

"The Workers' Compensation Act provides exclusive remedies for employees suffering work-related injuries and occupational diseases." *Horodyskyj v. Karanian*, 32 P.3d 470, 474 (Colo. 2001). The bar of workers' compensation extends, however, only to actions founded upon injuries compensable under the Act. Colo. Rev. Stat. §§ 8–42–102 and 8–52–102; *see also Packaging Corp. of America v. Roberts*, 455 P.2d 652 (Colo. 1969); *Alexander v. Morrison-Knudsen Company*, 444 P.2d 397 (Colo. 1968). An injury resulting from an act or omission of the employer is compensable "where the necessary employer-employee relationship exists and both the service being performed and the injury sustained arise out of and in the course of employment." *Johnson v. Indus. Comm'n of Colo.*, 328 P.2d 384, 387 (Colo. 1958); Colo. Rev. Stat. § 8–52–102. Cognizant of the Act's broad remedial objective, Colorado courts have interpreted this standard of compensation to include injuries arising from the intentional acts of a co-employee, as long as the requisite degree of job relatedness is present. *Kandt v. E.B. Evans, Colo.*, 645 P.2d 1300 (Colo. 1982).

> [C]o-employee immunity for intentional wrongs is strictly limited to injuries sustained where both the tort feasor and the victim are acting within the course of their employment. Thus, the deterrent function of tort liability would be preserved as to those acts between employees not "arising out of and in the course of" the employment relation.

*Kandt*, 645 P.2d at 1305.

In support of her argument, Defendant Presley relies on Plaintiffs' description in the "Parties" section of the Complaint that Defendant Presley "at all relevant times was

the undersheriff for the county of El Paso" and '[a]ll of [Defendant] Presley's conduct

occurred as [Defendant Presley was acting as the undersheriff . . . ."  (Doc. # 9 at ¶ 5;

Doc. # 64 at ¶ 8.)  In *Kandt*, the court explained that

> the district court normally would have been required to scrutinize [the defendant's] acts to determine, under the appropriate standard, whether he was acting in the course of his employment . . . .  However, the plaintiff specifically alleged in her complaint that [the defendant] "at all times referenced herein was employed by and acting within the scope of his employment as an employee for the defendant."

*Kandt*, 645 P.2d at 1305.  Thus, the court held that the trial court was "justified in

dismissing the plaintiff's action without holding an evidentiary hearing to determine

whether the defendant was acting outside the course of his employment.  *Id.* at 1306.

In this case, as to both Defendant Presley and Maketa, Plaintiffs allege that

Defendants were, at all relevant times, acting as the undersheriff and the sheriff,

respectively, for El Paso County.  (Doc. # 64 at ¶¶ 7, 8.)  Moreover, despite twice

amending their complaint, Plaintiffs fail to allege that either Defendant Presley or

Defendant Maketa was acting outside the scope of her or his employment.  *See Kandt*,

645 P.2d at 1305.

As such, Plaintiffs' outrageous conduct claim asserted against Defendants

Maketa and Presley are dismissed.

Based on the foregoing analysis, it is ORDERED:

1.      The "Motion to Dismiss from Defendant Terry Maketa" (Doc. # 28) and

"Defendant Presley's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. #

32) are GRANTED in part and DENIED in part.  The official-capacity claims against

Defendants Maketa and Presley are dismissed.  Plaintiffs' Fifth Claim for Relief for

outrageous conduct asserted against Defendants Maketa and Presley is dismissed.

Defendants Maketa and Presley's motions are denied in all other respects.

2.      The "County Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. # 33) is GRANTED.  Plaintiffs' First, Second, Third, and Fourth Claims for Relief asserted against Defendants Board of County Commissioners of El Paso County and Bill Elder are dismissed.

3.      The "County Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. # 85) is GRANTED in part and DENIED in part.  Plaintiffs' Sixth Claim for Relief for Title VII retaliation asserted against Defendant Elder is dismissed.  The motion is denied in all other respects.

5.      The case will proceed as follows:

a.      One consolidated claim for relief for retaliation related to the EEOC complaint and the BOCC request for investigation by Plaintiffs Lincoln, King, and Gehrett against Defendants Maketa and Presley;

b.      Plaintiff Peck's Third Claim for Relief for retaliation asserted against Defendant Maketa;

c.      Plaintiff Stone's Fourth Claim for Relief for retaliation asserted against Defendant Maketa; and

d.      Plaintiffs Lincoln, King, and Gehrett's Sixth Claim for Relief for Title VII retaliation asserted against Defendant Board of County Commissioners of the County of El Paso.

DATED:  March 31, 2016

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge